USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/21/21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                                                                                                    :

ROY TAYLOR,                                                       :

                                                              Plaintiff,    :

                                                                                  :                      1:16-cv-1143-GHW

                                                              -v-                                                   :

                                                                                                         :        MEMORANDUM OPINION &
RIKERS C.O. QUAYYUM, and CITY OF   :                    ORDER
NEW YORK,                                                       :

                                                               Defendants.  :

                                                                                               :
------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

### I.    INTRODUCTION

On January 25, 2016, Roy Taylor, a pretrial detainee on Rikers Island, was injured by the blowback of a correction officer's unreasonable use of pepper spray. Correction Officer Quayyum ("C.O. Quayyum") was cursed out by an inmate. In response, the officer sprayed him with pepper spray. Because Mr. Taylor was near the targeted inmate, the pepper spray afflicted Mr. Taylor as well. The exposure caused him to cough, made it difficult for him to breathe, and burned his eyes and skin.

Mr. Taylor, acting *pro se*, filed this civil rights lawsuit under 18 U.S.C. § 1983, alleging that C.O. Quayyum used excessive force and was indifferent to his medical needs. Mr. Taylor does not allege that he was the intended target of the pepper spray. However, because C.O. Quayyum's use of the pepper spray was intentional and unreasonable, Mr. Taylor has adequately pleaded an excessive force claim against C.O. Quayyum.

### II. BACKGROUND

#### a. Facts[1]

Plaintiff is a pretrial detainee at Rikers Island in New York City. He was housed at Rikers' Robert N. Davoren Complex ("RNDC"). On January 25, 2016, while at RNDC, Plaintiff "was exposed to MK-9 pepper spray." Complaint ("Compl."), Dkt. No. 2, at 10.[2] A "'trigger happy' C.O. Quayyum [] recklessly sprayed inmate Louis Dorsey unprovoked for cussing him out." *Id.* "[S]o much mace was used that it affected [Plaintiff] and . . . other inmates and guards in the immediate area." *Id.* Plaintiff "suffered restricted breathing, caoughing [sic], sneezing, burning of eyes and throat and skin erritation [sic]" as a result of the pepper spray exposure. *Id.* The incident also caused him "mental anguish." *Id.* at 3.

According to Plaintiff, C.O. Quayyum's use of pepper spray violated the New York City Corrections Department's (the "D.O.C.") "chemical directive guideline[s]." *Id.* at 10; *Id.*, Ex. A (the "Chemical Agents Guidelines") at 27. Section V.A.3 of the Chemical Agents Guidelines prohibits the use of hand-held chemical agents "[t]o force an inmate to comply with an officer's verbal orders" and "[t]o punish an inmate," among other proscriptions. Chemical Agents Guidelines at 27. Those prohibitions are subject to exceptions when an officer uses hand-held chemical agents "[t]o defend oneself" or "[t]o defend another employee, inmate or visitor." *Id.* at 26.

After being sprayed, Plaintiff "and others were denied medical treatment and ordered to line up." *Id.* at 15.[3] Plaintiff and other inmates were then "escorted" back to their units and "denied

---

[1] Unless otherwise noted, the facts are taken from the Complaint, and are accepted as true for purposes of this Rule 12(b)(6) motion. *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] The Court refers to the relevant ECF page number when citing to the Complaint.

[3] In his Opposition brief and for the first time, Plaintiff alleges that a John Doe "Captain assigned to the area" also denied him "medical treatment" and "'acted in concert' with [C.O. Quayyum] in an apparent coverup" of the spraying. Dkt. No. 150 ("Opp'n") at 4. As noted by the City Defendants in their Reply in Support of the Motion to Dismiss, Dkt.

2

medical treatment." *Id.* Plaintiff alleges that C.O. Quayyum "failed to treat [Plaintiff] and covered [the pepper spray incident] up by returning [Plaintiff] and others to unit." *Id.*

### b. Procedural History

Plaintiff was arrested by the New York City Police Department on December 26, 2015. *Id.* at 8. That arrest led to criminal charges against Plaintiff in New York State Supreme Court. Dkt. No. 8, Ex. A. Plaintiff brought this action on February 9, 2016 asserting claims for false arrest and the use of excessive force in relation to his December 26, 2015 arrest, and asserting claims for excessive force and deliberate indifference in relation to the January 25, 2016 incident at RNDC. Compl. at 8–12. On June 3, 2016, Judge Richard Sullivan, who was then presiding over this case, stayed the entire action pending resolution of Plaintiff's criminal case. Dkt. No. 9.

On March 11, 2019, Plaintiff moved to amend his original complaint (the "Complaint") to add additional claims relating to his criminal prosecution. Dkt. No. 79. The Court granted Plaintiff leave to do so. Dkt. No. 80. Plaintiff then filed his First Amended Complaint (the "FAC") on May 9, 2019, Dkt. No. 87, after which—and without leave of Court—he filed his Second Amended Complaint (the "SAC"), Dkt. No. 90.

On December 10, 2020, this Court partially lifted the stay, permitting Plaintiff to proceed on his claims related to the incident at RNDC. Dkt. No. 132. Plaintiff's criminal charges are still pending in New York State Supreme Court and, therefore, Plaintiff's claims arising from his December 26, 2015 arrest and subsequent prosecution remain stayed. *Id.*

The City Defendants filed a motion to dismiss on December 30, 2020, arguing that because Plaintiff failed to plead his claims related to the incident at RNDC against the City Defendants in the SAC, the City Defendants should be dismissed from this action. *See* Dkt. No. 135 ("Def.'s Br."), at

---

No. 151 ("Reply"), the John Doe Captain is not a named defendant in this case. Reply at 5. The Court therefore does not consider any allegations against him.

6–7.  In the alternative, the City Defendants argue that Plaintiff has failed to plead sufficient facts to support his claims for excessive force and deliberate indifference under 18 U.S.C. § 1983 and that he has failed to plead the existence of any municipal policy, practice, or custom sufficient to establish liability under *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658 (1978).  *Id.* at 7–12.  Plaintiff filed his opposition on February 9, 2021.  Opp'n.  The City Defendants filed a reply on March 22, 2021.  Reply.

### c. Operative Complaint

Because Plaintiff is proceeding *pro se*, the Court will consider the Complaint, FAC, and SAC together as the operative pleading.  This is a threshold issue that the Court must address at the outset because neither the FAC nor the SAC mention the January 25, 2016 incident at RNDC.

"It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect."  *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977).  When the plaintiff is *pro se*, however, some courts "will consider facts from the [p]laintiff's [previous complaint] that have not been repeated in the [amended complaint]."  *Washington v. Westchester Cnty. Dep't of Corr.*, No. 13-cv-5322, 2015 WL 408941, at *1 n.1 (S.D.N.Y. Jan. 30, 2015) (citations omitted); *see also, e.g., Little v. City of New York*, No. 13-cv-3813, 2014 WL 4783006, at *1 (S.D.N.Y. Sept. 25, 2014) ("The plaintiff thus appears to believe that the Amended Complaint supplements, rather than replaces, the Original Complaint.  Because the plaintiff is proceeding *pro se*, the Court will consider the Original Complaint and the Amended Complaint together as the operative pleading."); *Camarano v. City of New York*, 624 F. Supp. 1144, 1147–48 (S.D.N.Y. 1986) ("Apparently viewing the amended complaint as supplemental, [plaintiff] did not repeat in his later filing the allegations set forth in the original complaint. . . . Since *pro se* civil rights complaints should be read with generosity, [plaintiff's] complaint must be given the benefit of incorporation." (internal quotation marks and citation omitted)).

4

It is apparent that Plaintiff believed that the FAC and SAC would supplement, rather than replace, his original complaint. In fact, he titled his SAC an "addedum [sic] to amended complaint," evincing his belief that it would add to the previously filed pleadings. *See* SAC at 1. Therefore, the Court has elected to consider the factual support for Plaintiff's allegations contained in his Complaint, FAC and SAC.

### III.   STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a complaint fails to meet this pleading standard, a defendant may move to dismiss it for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

A court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor.[4] *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir.

---

[4] The City Defendants contest Plaintiff's description of events. They ask me to adopt the facts from the D.O.C.'s investigative report filed in *Brown v. City of New York*, No. 16-CV-06077 (E.D.N.Y. Mar. 18, 2020). *See* Def.'s Br. at 8; Dkt. No. 153-1 ("Rolon Decl."), Ex. A. The City Defendants allege that Mr. Taylor's complaint concerns the same incident analyzed in *Brown*. Def.'s Br. at 8. According to *Brown*, C.O. Quayyum was breaking up a fight when he used pepper spray on a group of inmates. Rolon Decl. at 10. The Court cannot adopt the facts from *Brown* when deciding whether to dismiss Mr. Taylor's complaint. On a motion to dismiss, the Court must take as true the facts alleged by the plaintiff and draw all inferences in his favor. The Court may only "consider documents that are attached to the complaint, incorporated in it by reference, integral to the complaint, or the proper subject of judicial notice." *United*

5

2008) (per curiam). But the Court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013) (citation omitted). And a complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87–88 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678–79).

Because he is proceeding *pro se*, the Court must liberally construe Plaintiff's submissions and interpret them "to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)); *see also, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed' . . . ." (citation omitted)); *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) ("Where . . . the complaint was filed *pro se*, it must be construed liberally to raise the strongest arguments it suggests." (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013))). This mandate "applies with particular force when a plaintiff's civil rights are at issue." *Bell v. Jendell*, 980 F. Supp. 2d 555, 558 (S.D.N.Y. 2013) (quoting *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 348 (S.D.N.Y. 2009)). Even so, "dismissal of a *pro se* complaint is . . . appropriate where a plaintiff has clearly failed

---

*States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (internal quotation marks omitted). Neither *Brown* nor the D.O.C.'s investigative report are attached to the complaint, incorporated in it by reference, or integral to the Complaint; the Complaint makes no reference to any investigative report or to any other lawsuits arising from the same incident. Under Federal Rule of Evidence 201, the Court can take judicial notice of a fact only when it "is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. The Court can therefore take judicial notice of Judge Amon's decision in *Brown* since the fact of that decision is not subject to reasonable dispute. The Court cannot, however, adopt the facts relied upon in *Brown*. *See Strock*, 982 F.3d at 63 (noting that the court was permitted to take judicial notice of a public report "in order to determine *what* statements [it] contained . . . *not for the truth of the matters asserted* therein." (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (alterations and emphasis in original)).

to meet minimum pleading requirements." *Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997)).

The Court has reviewed Plaintiff's Complaint and construes it to raise both federal and state law claims arising from the January 25, 2016 incident at RNDC. The Court construes Plaintiff's Complaint to raise the following claims under 18 U.S.C. § 1983: (1) excessive force in violation of the Fourteenth Amendment; (2) deliberate indifference to medical needs in violation of the Fourteenth Amendment; and (3) municipal liability against the City of New York. Although Plaintiff brings this action under 18 U.S.C. § 1983, *see* Compl. at 1, the Court has an obligation to carefully review a *pro se* plaintiff's pleadings and construe them to raise the strongest arguments they suggest. *See Triestman*, 470 F.3d at 474. This includes an obligation to consider state law claims even where, as here, a Plaintiff has only referenced a federal cause of action. *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 157–158(2d Cir. 2017) (overruling Judge William Pauley's determination that a *pro se* plaintiff only asserted claims under federal law where she did not check the blanks corresponding to two state causes of action on a complaint form provided by the district court's *pro se* office). Therefore, the Court also construes Plaintiff's Complaint as raising the following state law claims arising from the January 25, 2016 incident: (1) battery; (2) assault; and (3) intentional infliction of emotional distress.

### IV. DISCUSSION

#### a. Excessive Force

Plaintiff has adequately pleaded that C.O. Quayyum acted in an objectively unreasonable manner when he deliberately sprayed Mr. Dorsey. Because Plaintiff was injured as a result of C.O. Quayyum's conduct, Plaintiff's claim for excessive force is adequately pleaded. "Section 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United

States." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (citations omitted). "Analysis of a claim for use of excessive force begins with 'identification of the specific constitutional right allegedly infringed by the challenged application of force.'" *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (brackets omitted) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)). "While the Eighth Amendment's protection does not apply 'until after conviction and sentence,' the right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment." *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (citation omitted) (quoting *Graham*, 490 U.S at 392 n.6). As a pretrial detainee, Plaintiff's excessive force claim arises under the Fourteenth Amendment.

To state a claim for excessive force under the Fourteenth Amendment, a pretrial detainee must allege that the defendant used force "purposefully, knowingly, or (perhaps) recklessly." *Edrei v. Maguire*, 892 F.3d 525, 534 (2d Cir. 2018) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 395–96 (2015)). This is because "accidental or negligent acts are not subject to Fourteenth Amendment liability." *Id.* A pretrial detainee must also allege that "the force purposely or knowingly used against him was objectively unreasonable." *Id.* (internal quotation marks omitted). "'[A] pretrial detainee can prevail' by alleging 'that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose.'" *Id.* at 535 (quoting *Kingsley*, 576 U.S. at 398). In *Kingsley*, the Supreme Court cautioned that this standard cannot be applied "mechanically" and that "objective reasonableness turns on the facts and circumstances of each particular case." 576 U.S. at 397 (internal quotation marks omitted). However, the following six non-exhaustive factors "bear on the reasonableness or unreasonableness of the force used: [(1)] the relationship between the need for the use of force and the amount of force used; [(2)] the extent of the plaintiff's injury; [(3)] any effort made by the officer to temper or to limit the amount of force;

[(4)] the severity of the security problem at issue; [(5)] the threat reasonably perceived by the officer; [(6)] and whether the plaintiff was actively resisting." *Id.*

Plaintiff has plausibly alleged that C.O. Quayyum's use of force was deliberate. He describes the officer as "trigger happy" and alleges that C.O. Quayyum "recklessly" sprayed Mr. Dorsey after Mr. Dorsey used foul language. Compl. at 10. According to Plaintiff, the officer used the mace because "an inmate cusse[d]" at him. *Id.* Plaintiff has therefore alleged that C.O. Dorsey's discharge of the pepper spray was intentional. *See Kingsley*, 576 U.S. at 396 ("[I]f the use of force is deliberate—*i.e.*, purposeful or knowing—the pretrial detainee's claim may proceed.")

Plaintiff has also alleged that the use of force was objectively unreasonable. According to the Complaint, C.O. Quayyum sprayed Mr. Dorsey merely because he cursed at him, not because there was a security issue or other threat. Compl. at 15. Plaintiff has therefore alleged that Mr. Dorsey's conduct did not reasonably require the use of pepper spray. Plaintiff has also alleged that he, along with other inmates, suffered harm as a result of C.O. Quayyum's use of the pepper spray. *Id.* at 10. The injuries Plaintiff alleges, including difficulty breathing, skin irritation, and burning of the eyes, are sufficient to state a claim for excessive force. *See Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987) ("If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe."). The other *Kingsley* factors do not apply here because Plaintiff alleges that there was no real or perceived security threat.

The City Defendants argue that Plaintiff has failed to plead an excessive force claim against C.O. Quayyum because Plaintiff was "not the target of the chemical agent." Def.'s Br. at 8. This is not, however, a categorical rule. *Compare McNair v. Ponte*, No. 17 Civ. 2976, 2020 WL 3402815, at *4 (S.D.N.Y. June 18, 2020) (noting that "the secondhand inhalation of pepper spray by persons who were not the intended targets of the discharge does not typically give rise to a constitutional claim." (quoting *Gutierrez v. City of New York*, No. 13 Civ. 3502, 2015 WL 5559498, at *8 (S.D.N.Y. Sept. 21,

9

2015))), *with Rodriguez v. City of New York*, No. 14-cv-8647, 2016 WL 11483837, at *5–6 (S.D.N.Y. Aug. 2, 2016) (finding that a plaintiff stated an excessive force claim by alleging that he was exposed to pepper spray following five corrections officers' "unprovoked assault" on another inmate), *report and recommendation adopted by* 2016 WL 5476003 (S.D.N.Y. Sept. 29, 2016) *and Hodge v. City of New York*, No. 19-cv-2474, 2019 WL 1455170, at *2 n.2 (S.D.N.Y. Apr. 1, 2019) (noting that "[a] prisoner may be able to state an excessive force claim if he is injured by officers who are using force against another inmate.").

The Second Circuit has yet to consider whether an unintended target of an officer's unreasonable use of force can plausibly state a claim for excessive force. The Ninth Circuit, however, has held that officers are liable for excessive force under the Eighth Amendment "so long as they have a specific intent to harm" regardless of their intended target. *Robins v. Meecham*, 60 F.3d 1436, 1440 (9th Cir. 1995). In the Ninth Circuit, when bringing an excessive force claim under the Eighth Amendment, a plaintiff need not allege "a specific intent to punish a specific individual." *Id.* at 1439. Instead, "[e]xcessive force directed at one prisoner can also establish a cause of action for harm that befalls other prisoners." *Clement v. Gomez*, 298 F.3d 898, 903 n.3 (9th Cir. 2002). Some courts in this district have adopted the Ninth Circuit's approach. *See e.g.*, *Santos v. N.Y.C. Dep't of Corr.*, No. 08 Civ. 8790, 2010 WL 1142066, at *9 (S.D.N.Y. Feb. 25, 2010) (following the Ninth Circuit's analysis in *Robins* and finding that "when a correctional official intentionally and wantonly uses force without justification against one inmate, and thereby creates a substantial risk of harm and actual injury to other inmates, it cannot be the case that she is free of constitutional liability to the inmates she injures just because they were not her intended targets"), *report and recommendation adopted by* 2010 WL 1142065 (S.D.N.Y. Mar. 25, 2010); *Bilan v. Davis*, No. 11 Civ. 5509, 2013 WL 3940562, at *7 (S.D.N.Y. July 31, 2013) (following the reasoning from *Robins* and *Santos* in holding that plaintiff's "allegations could *potentially* state a claim for excessive force if he was injured while officers

10

were trying to use excessive force against the non-party inmate"), *report and recommendation adopted by* 2013 WL 4455408 (S.D.N.Y. Aug. 20, 2013).

This Court need not decide whether, categorically, an unintended victim of pepper spray targeted at another has a cause of action for excessive force under the Fourteenth Amendment. *Edrei* suggests that each case should be evaluated on the basis of its unique facts—weighing against Defendants' argument that such a categorical rule exists. 892 F.3d at 536 ("the central inquiry has always been whether the government action was rationally related to a legitimate government objective."). The Court decides this case based on the fundamental principles outlined in *Edrei*. Where, as here, a plaintiff has alleged that the use of force was intentional—that is, that C.O. Quayyum deliberately used the pepper spray—and that the use of that force was objectively unreasonable, he has adequately pleaded a claim of excessive force under the Fourteenth Amendment. Therefore, the City Defendants' motion to dismiss Plaintiff's claim for excessive force against C.O. Quayyum is denied.

### b. Deliberate Indifference to Medical Needs

Because Plaintiff has not alleged a sufficiently serious injury, his deliberate indifference claim against C.O. Quayyum must be dismissed. A claim for deliberate indifference, when brought by a pretrial detainee, is "governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). This is because "pretrial detainees have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise." *Id.* (citation and internal quotation marks omitted).

A claim for deliberate indifference to serious medical needs has two elements. "The first requirement is objective: the alleged deprivation of adequate medical care must be 'sufficiently serious.'" *Spavone v. New York State Dep't of Correctional Servs.*, 719 F.3d 127, 138 (2d Cir. 2013)

(internal quotation marks omitted) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006)). "The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care." *Id.* Following the Supreme Court's decision in *Kingsley*, 576 U.S. 389, the Second Circuit held that the second element of a deliberate indifference claim—often referred to as the "*mens rea* prong"— is to be assessed objectively. *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 719 (2d Cir. 2017) (citing *Darnell*, 849 F. 3d at 33, 35).

The Court first examines the objective prong. "Determining whether a deprivation is an objectively serious deprivation entails two inquiries." *Salahuddin*, 467 F.3d at 279. Courts must first determine "whether the prisoner was actually deprived of adequate medical care." *Id.* If so, the Court must then consider "whether the inadequacy in medical care is sufficiently serious." *Id.* at 280. "[I]f the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." *Id.* at 280. "Factors relevant to the seriousness of a medical condition include whether 'a reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'" *Id.* (alteration in original) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

Plaintiff pleads an actual deprivation of adequate medical care. He never received any medical attention following his exposure to the pepper spray. *See* Compl. at 15 ("[D]efendant failed to treat me").

Plaintiff does not, however, allege an injury that is sufficiently serious to state a claim for deliberate indifference to medical needs. Plaintiff's alleged injuries include "rest[r]icted breathing, caoughing [sic], sneezing, burning of eyes and throat, skin irritation [and] mental anguish." Compl. at 3. "[T]he temporary discomfort caused by pepper spray . . . does not constitute a sufficiently serious [objective] injury." *McArdle v. Ponte*, No. 17-cv-2806, 2018 WL 5045337, at *4 (S.D.N.Y.

Oct. 17, 2018) (internal quotation marks omitted) (quoting *Holmes v. City of New York*, No. 17 cv 3874, 2018 WL 4211311, at *7 (S.D.N.Y. Sept. 4, 2018)); *see also Johnson v. Schiff*, No. 17-cv-8000, 2019 WL 4688542, at *14 (S.D.N.Y. Sept. 26, 2019) (finding plaintiff failed to plead deliberate indifference because he did not claim "that he suffered permanent effects or serious injury from the pepper spray"); *Wright v. Trapasso*, No. 15-cv-4428, 2018 WL 4688940, at *11 (E.D.N.Y. Sept. 28, 2018) (stating that "[p]laintiff's 'incredible discomfort' as a result of the pepper spray does not rise to the level of seriousness required for a constitutional violation"). Therefore, Plaintiff has not alleged a sufficiently serious injury. *See McArdle*, 2018 WL 5045337, at *1, 4 (plaintiff who alleged that pepper spray exposure caused him "temporary vision loss, respiratory difficulties, and skin irritation" did not plead a sufficiently serious injury); *Holmes*, 2018 WL 4211311, at *7 (plaintiff who suffered a "20–60 minute coughing fit and burning sensations on his skin and eyes" after exposure did not plead a sufficiently serious injury); *Williams v. City of New York Dep't of Corr.*, No. 19 Civ. 9528, 2020 WL 3893929, at *5 (S.D.N.Y. July 10, 2020) (holding that plaintiff who alleged trouble breathing and chest pains at the time of exposure and claimed that denial of care worsened his asthma did not identify "a serious condition that . . . caused him chronic and substantial pain or that . . . significantly affected his daily activities").

Plaintiff has not adequately pleaded that his injury was sufficiently serious under the objective prong and, therefore, the Court need not consider whether the denial of care was subjectively reckless. Because Plaintiff does not allege a sufficiently serious injury, his claim against C.O. Quayyum for deliberate indifference to his medical needs is dismissed.

### c. Municipal Liability

Plaintiff has not identified a municipal policy or custom that is responsible for the alleged constitutional violations and, therefore, has not stated a federal claim against the City of New York. A municipality is not vicariously liable for its employees' actions under 42 U.S.C. § 1983. *Connick v.*

*Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 691). Municipalities are, however, liable for "their *own* illegal acts." *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)). Plaintiffs seeking to hold a municipality liable under § 1983 must plead "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (internal quotation marks omitted).

A plaintiff may satisfy the "policy or custom" element in one of four ways: by alleging the existence of (1) a formal policy, *see Monell*, 436 U.S. at 690; (2) actions taken or decisions made by final municipal policymakers that caused the violation of plaintiff's rights, *see Pembaur*, 475 U.S. at 483-84; (3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policymakers, *see Monell*, 436 U.S. at 690–91; or (4) a failure to properly train or supervise municipal employees that amounts to "deliberate indifference to the rights of those with whom municipal employees will come into contact." *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see also Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996).

The facts pleaded by Plaintiff do not support liability on the basis of any of the first three theories. The only official policy mentioned by Plaintiff is the Chemical Agent Guidelines. And that policy explicitly prohibited this conduct. *See* Chemical Agents Guidelines at 27. Second, Plaintiff never implicates any final municipal policymakers. A final municipal policymaker is an official "sufficiently high up in the municipal hierarchy that he [i]s responsible under state law for making policy in that area of the municipality's business." *Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 98 (2d Cir. 2020) (internal citations and quotation marks omitted). Plaintiff does not allege that any such official was involved in the incident. C.O. Quayyum is the only D.O.C. officer mentioned, and there is no allegation that C.O. Quayyum was responsible for establishing D.O.C. policy. Finally, Plaintiff only describes one incident involving the use of pepper spray, not a "persistent and

14

widespread" practice. *See, e.g.*, *Jones v. Town of E. Haven*, 691 F.3d 72, 85 (2d Cir. 2012) (holding that two or three alleged constitutional violations did not demonstrate "a policy, custom, or usage" for purposes of *Monell* liability).

Thus, Plaintiff's only potential theory of liability under *Monell* is a failure to train. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61. In order for municipal liability to attach on a failure to train theory, "a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (citing *City of Canton*, 489 U.S. at 388). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (internal quotation marks and citation omitted).

Plaintiff does not allege that improper training or supervision caused his constitutional deprivation, and Plaintiff details only one instance in which he was exposed to pepper spray. On its own, this incident does not provide a sufficient factual basis to plead improper training or supervision. *See Cox v. City of New Rochelle*, No. 17-cv-8193, 2019 WL 3778735, at *8 (S.D.N.Y. Aug. 12, 2019) (holding that plaintiff failed to state a *Monell* claim regarding improper training when the only facts alleged were drawn "from the incident giving rise to this case"); *Holmes*, 2018 WL 4211311, at *3 (stating that "a pattern of similar incidents" was necessary for alleging *Monell* liability regarding improper training and pepper spray exposure). Because Plaintiff has not alleged that an official municipal policy or custom deprived him of his constitutional rights, he has failed to state a claim for municipal liability under *Monell* and his federal claims against the City of New York must be dismissed.[5]

---

[5] Plaintiff alleges in his Opposition that "a Captain assigned to the area . . . 'acted in concert' with Quayyum in an apparent cover up" after Plaintiff was exposed to pepper spray. *See* Opp'n at 4. These allegations were not raised in the Complaint, the FAC, or the SAC. Even if the Court were to exercise its discretion to consider Plaintiff's new factual

**d. State Law Claims**

The City Defendants did not address any of Plaintiff's possible state law causes of action in their motion. Courts, however, have an obligation to liberally construe a *pro se* plaintiff's pleadings and identify all possible claims, even those not explicitly referenced. *See McLeod*, 864 F.3d at 157. Despite the City Defendants' failure to raise or brief this issue, the Court has construed Plaintiff's Complaint to bring intentional infliction of emotional distress (IIED) and assault and battery claims under New York State law.

1. Assault and Battery

Plaintiff has sufficiently pleaded that C.O. Quayyum used excessive force against him, and, therefore, Plaintiff has sufficiently alleged assault and battery claims against both C.O. Quayyum and the City of New York. "Under New York law, civil assault 'is an intentional placing of another person in fear of imminent harmful or offensive contact.'" *Tardif v. City of New York*, 991 F.3d 394, 410 (2d Cir. 2021) (quoting *Charkhy v. Altman*, 678 N.Y.S.2d 40, 41 (1st Dep't 1998)). "Civil battery is an intentional wrongful physical contact with another person without consent." *Id.* (internal quotation marks omitted) (quoting *Charkhy*, 678 N.Y.S.2d at 41). "The elements of New York assault and battery and Section 1983 excessive force claims are substantially identical." *Id.* (internal quotation marks omitted) (quoting *Posr v. Doherty*, 944 F.2d 91, 94–95 (2d Cir. 1991). "To succeed on assault or battery claims in the law enforcement context, a plaintiff must also demonstrate that

---

allegations regarding the John Doe Captain, he would still fail to allege a policy or custom that resulted in a constitutional deprivation. First, the newly raised factual allegations against the John Doe Captain do not change Plaintiff's description of his injuries. Plaintiff still fails to assert a sufficiently serious injury in order to plead a deliberate indifference to medical needs claim against anyone. The fact that a John Doe Captain saw that Plaintiff and others suffered from these short-term pepper spray effects changes nothing. "A municipality is not liable under § 1983 when no constitutional violation has occurred." *Williams*, 2020 WL 3893929, at *6. Second, Plaintiff does not allege that the John Doe Captain himself used pepper spray or otherwise deployed force against Plaintiff, nor that the John Doe Captain was even present when C.O. Quayyum deployed the chemical agent. Third, Plaintiff does not allege that the John Doe Captain had decision-making authority or was a policy-maker and, therefore, his inaction would not establish a policy or custom sufficient to create *Monell* liability.

the defendant officer's conduct 'was not reasonable within the meaning of the New York statute concerning justification of law enforcement's use of force in the course of their duties.'" *Id.* (quoting *Nimely v. City of New York*, 414 F.3d 381, 391 (2d Cir. 2005)). "[P]er the text of [New York Penal Law § 35.30], the use of physical force 'when and to the extent the officer reasonably believes such to be necessary,' is the 'functional equivalent' of an objective reasonableness standard." *Id.* (brackets omitted) (quoting *Heath v. Henning*, 854 F.2d 6, 9 (2d Cir. 1988)). Thus, having already found that Plaintiff has adequately pleaded an excessive force claim against C.O. Quayyum under § 1983, the Court also finds that Plaintiff has sufficiently alleged assault and battery claims against C.O. Quayyum.

Plaintiff has also adequately alleged assault and battery against the City of New York because the City can be held liable under a theory of *respondeat superior*. One crucial difference between assault and battery under New York law and an excessive force claim under federal law is that "under state law, the City may be held vicariously liable for the torts of its employees . . . regardless of whether those actions resulted from a municipal policy or practice." *Johnson v. N.Y. Dep't of Corr.*, No. 15-CV-640, 2015 WL 4884880, at *3 (E.D.N.Y. Aug. 13, 2015); *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 399 (S.D.N.Y. 2013) (stating that *respondeat superior* applies to state law claims for assault and battery against a city). Therefore, Plaintiff's claims for assault and battery against C.O. Quayyum and the City of New York may proceed.

2. Intentional Infliction of Emotional Distress

Because Plaintiff has alternative claims available to him and because he has not sufficiently alleged at least two of the claim's elements, his IIED claims against C.O. Quayyum and the City of New York must be dismissed. "Under New York law [] a claim for IIED requires a showing of: '(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv)

17

severe emotional distress.'" *Rich v. Fox News Network, LLC*, 939 F.3d 112, 122 (2d Cir. 2019) (quoting *Howell v. N.Y. Post Co.*, 596 N.Y.S.2d 350, 353 (1993)). "As New York's highest court has observed, the standard for stating a valid claim of [IIED] is 'rigorous, and difficult to satisfy.'" *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) (quoting *Howell*, 596 N.Y.S.2d at 353). "To meet this standard, the conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized' society.'" *Specht v. City of New York*, 15 F.4th 594, 606 (2d Cir. 2021) (quoting *Murphy v. Am. Home Prods. Corp.*, 461 N.Y.S.2d 232, 236 (1983)).

Plaintiff has not pleaded the second or fourth element of an IIED claim. Plaintiff has not alleged that C.O. Quayyum intended to cause or disregarded the probability of causing Plaintiff severe emotional distress when he exposed Plaintiff to pepper spray. Nor has Plaintiff pleaded that he actually experienced severe emotional distress. Plaintiff's only reference to emotional distress is the broad assertion that he suffered "mental anguish." Compl. at 3. This lone and conclusory allegation is insufficient to plead severe emotional distress. *See Delaney v. Perez*, No. 19-cv-6084, 2021 WL 3038642, at *7 (S.D.N.Y. July 16, 2021) ("Any allegations of suffering from severe emotional distress must be supported with objective evidence and not speculative claims."); *Winter v. Pinkins*, No. 14-cv-8817, 2016 WL 1023319, at *7 (S.D.N.Y. Mar. 8, 2016) ("conclusory allegations do not suffice to withstand a Rule 12(b)(6) motion, as Plaintiff offers no facts indicating what emotional distress he suffered, how long it lasted, how severe it was, and whether he sought medical treatment for the distress.").

Furthermore, IIED is "a highly disfavored tort under New York law," *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014) (brackets and internal quotation marks omitted), and "may be invoked only as a last resort, to provide relief in those circumstances where traditional theories of recovery do not," *Rich*, 939 F.3d at 122 (quoting *Salmon*, 802 F.3d at 256). "[W]here the

challenged conduct 'falls well within the ambit of other traditional tort liability,'" the New York Appellate Division courts have all held that IIED claims cannot be brought. *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) (first quoting *Fischer v. Maloney*, 43 N.Y.2d 553, 557–58 (1978); then citing *Doin v. Dame*, 82 A.D.3d 1338, 1340 (3d Dep't 2011); *Leonard v. Reinhardt*, 20 A.D.3d 510, 510 (2d Dep't 2005); *Di Orio v. Utica City Sch. Dist. Bd. of Educ.*, 305 A.D.2d 1114, 1115 (4th Dep't 2003); and *Hirschfeld v. Daily News, L.P.*, 269 A.D.2d 248, 249 (1st Dep't 2000)). As described above, Plaintiff has other causes of action available to him to challenge C.O. Quayyum's use of pepper spray. For the above reasons, Plaintiff's IIED claim against C.O. Quayyum is therefore dismissed.

## V.     LEAVE TO AMEND

The Court grants Plaintiff leave to replead his dismissed claims against C.O. Quayyum and the City of New York. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead."); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). While leave may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party," those circumstances do not apply in this case. *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (citation omitted). Any amended complaint must be filed no later than fourteen days from the date of this order. Because Plaintiff's third amended complaint would completely replace his existing complaints, any facts or claims that Plaintiff wishes to maintain must be included in the third amended complaint, including all claims relating to Plaintiff's arrest and ongoing prosecution.

## VI.     CONCLUSION

For the reasons stated here, the City Defendants' motion to dismiss is granted in part. Plaintiff's claim of deliberate indifference against C.O. Quayyum, his municipal liability claim against the City of New York, and his claims for IIED against C.O. Quayyum and the City of New York are

19

dismissed without prejudice. The City Defendants' motion to dismiss Plaintiff's excessive force claim against C.O. Quayyum and his claims for assault and battery against both C.O. Quayyum and the City of New York is denied.

The Court requests that counsel for Defendants provide Plaintiff with copies of unpublished cases cited in this decision pursuant to Local Rule of the United States District Courts for the Southern and Eastern Districts of New York 7.2.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to mail a copy of this order by first class mail to Plaintiff and to terminate the motion currently pending at Dkt. No. 134.

SO ORDERED.

Dated: December 21, 2021
New York, New York

_____
GREGORY H. WOODS
United States District Judge