UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/17/2023
```

--------------------------------------------------------------X
ROY TAYLOR,                           :
                                   :

               Plaintiff,   :

                                   :         1:16-cv-1143-GHW
       -against-              :

                                   :        MEMORANDUM
RIKERS C.O. QUAYYUM and CITY OF NEW   :      OPINION & ORDER
YORK                               :
                                   :
             Defendants.  :
--------------------------------------------------------------X
```

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

In January 2016, Plaintiff Roy Taylor, a pretrial detainee on Rikers Island, was waiting in line for a visit to the health clinic. Louis Dorsey, another inmate, was standing just three feet from Mr. Taylor. Mr. Dorsey cursed at Correction Officer Nayab Qayyum. Without more provocation than that, despite pleas from the inmates for calm, Officer Qayyum sprayed Mr. Dorsey in the eyes with mace. When Mr. Dorsey ducked toward Mr. Taylor, Officer Qayyum sprayed him in the face too.

Mr. Taylor, acting *pro se*, brought this action against Officer Qayyum and the City of New York asserting claims under 42 U.S.C. § 1983 for the excessive use of force and state law claims for assault and battery. The defendants moved for summary judgment with respect to those claims. However, in preparing their motion, the defendants disregarded substantial record evidence supporting Mr. Taylor's view of the incident—one in which Officer Qayyum's act was unprovoked and, therefore, at least arguably unreasonable. Because there are disputed issues of material fact regarding whether Officer Qayyum's use of force was reasonable, the defendants' motion is DENIED.

## II.    BACKGROUND

### A. Factual Background[1]

From Mr. Taylor's perspective, the facts of this case are straightforward.  At the time of the incident at issue in this motion, Mr. Taylor was a pretrial detainee housed at the Robert N. Davoren Complex on Rikers Island (the "RNDC").  Defendants' Rule 56.1 Statement ("Defs. 56.1"), Dkt. No. 233, ¶ 1.  On January 25, 2016, Mr. Taylor was brought to the corridor near the facility's medical clinic.  *Id.* ¶ 2.  Ten or more inmates were in the area waiting with Mr. Taylor.  Declaration of Amanda Rolon, Dkt. No. 232 ("Rolon Decl."), Ex. G Deposition of Roy Taylor ("Taylor Dep."), at 17:6-13.  One of the inmates was Louis Dorsey.  Taylor Dep. at 17:14-17.  One or two correction officers were also in the area.  Defs. 56.1 ¶¶ 4, 5; Taylor Dep. at 16:10-12.  One of those officers was the defendant, Correction Officer Nayab Qayyum.

Mr. Dorsey argued with Officer Qayyum.  Mr. Taylor heard Mr. Dorsey complaining to Officer Qayyum.  Taylor Dep. at 32:23-33:19.  Mr. Dorsey was not using a "normal voice"—the Court understands that his voice was elevated—and he "may have cussed [Officer Qayyum out.  He may have used profanity."  *Id.* at 33:11-15; 34:2-3.  Although Mr. Dorsey was insulting Officer Qayyum, he "wasn't in an aggressive stance, nothing . . . .  He was relaxed, and he just voiced how he felt."  *Id.* at 33:22-24.  "It [sic] wasn't no threats posed or – he never acted out or was in any stance to that effect."  *Id.* at 19:25-20:1.  To Mr. Taylor, it appeared that Officer Qayyum was "kind of insulted by [Mr. Dorsey] cussing him out."  *Id.* at 19:23-24.  "And he responded by pulling his mace out."  Officer Qayyum held the mace and pointed it at Mr. Dorsey.  *Id.* at 36:3-14; *see also*

---

[1]  The facts are drawn from Defendants' Local Civil Rule 56.1 statement and the parties' other submissions in connection with these motions.  The facts are either undisputed or viewed "in the light most favorable to the party opposing summary judgment"—Plaintiff—while "drawing all reasonable inferences in [his] favor."  *M.A. ex rel. H.R. v. Rockland Cnty. Dep't of Health*, 53 F.4th 29, 35 (2d Cir. 2022) (quoting *Guan v. City of New York*, 37 F.4th 797, 804 (2d Cir. 2022)).  Many of the facts described here are disputed; where facts are disputed, the narrative presented here is that provided by Plaintiff.

Taylor Affidavit, Dkt. No. 252 at ECF pp. 32-34 ("Taylor Aff.") ("This occurred [due] to a verbal confrontation between detainee Louis Dorsey & Quayyum which went viral and turned irrational by CO Quayyum . . . .").

Mr. Taylor was just feet away from Mr. Dorsey during Mr. Dorsey's altercation with Officer Qayyum.  Mr. Taylor testified that he was most likely 3-4 feet away from him.  *Id.* at 49:9-12.[2]  After he saw Officer Qayyum take out his mace, Mr. Taylor warned the officer not "to display that" around him.  *Id.* at 25:8.  Mr. Taylor and two other inmates said directly to Officer Qayyum "don't spray over here.  He's not doing anything to warrant spray."  *Id.* at 35:9-10; 35:18-20.

While Mr. Taylor and the other inmates were telling Officer Qayyum not to spray Mr. Dorsey, Mr. Dorsey "calmed down somewhat."  *Id.* at 35:25.  Mr. Dorsey, his hands down, said to Officer Qayyum "don't' spray me with that mace, don't spray me with that mace.  I wasn't doing anything to warrant spray."  *Id.* at 36:23-27:3.  Mr. Dorsey never approached the officer.  *Id.* at 37:4-6; ; *see also* Taylor Aff. at 32 ("at no time was Dorsey aggressive or made any threatening gestures and the use of mace [was] uncalled for . . . .").

Nevertheless, without warning, Officer Qayyum sprayed Mr. Dorsey:  he "just quickly sprayed."  *Id.* at 36:15-17.  Officer Qayyum sprayed the mace straight into Mr. Dorsey's eyes.  *Id.* at 38:9-10.  When he sprayed, the can of mace was very close to Mr. Dorsey's face—"like two inches from his face."  *Id.* at 38:11.

Mr. Dorsey tried to duck the spray and moved in the direction of Mr. Taylor—who was just 3-4 feet away from Mr. Dorsey when Officer Qayyum discharged his mace.  *Id.* at 43:9-17; 44:17-24.  Officer Qayyum, apparently tracking Mr. Dorsey's movements, aimed towards Mr. Taylor and other inmates.  *Id.* at 43:9-14.  The chemical spray hit Mr. Taylor in his face—in particular, his chin and eyes.  *Id.* at 45:7-9; *see also* Taylor Aff. at 32 ("I was sprayed directly in the face after missing Dorsey

[2] Mr. Taylor earlier testified that he was six feet from Mr. Dorsey.  Taylor Dep. 32:5.

who ducked in my close proximity."). Mr. Taylor's shirt was stained with the orange chemical from the spray. *Id.* at 45:10-13. And the mace suffused the air in the area where Mr. Taylor was standing.

Mr. Taylor does not contend that Officer Qayyum intentionally targeted him with mace. *Id.* at 43:22-24. Instead, he believes that when Officer Qayyum sprayed the mace "he sprayed it sort of recklessly, and it affected me." *Id.* at 44:2-3.

After Officer Qayyum sprayed Mr. Dorsey, Mr. Taylor and some of the other inmates, another correction officer asked the inmates to face the wall in the corridor. *Id.* at 25:16-21. Mr. Taylor went into the medical clinic after the spraying started to avoid the spray. *Id.* at 37:10-18. From there, he was directed to line up with other inmates and was taken back to his unit. *Id.* at 40:2-8.

After being sprayed, Mr. Taylor experienced a number of symptoms: coughing, sneezing, burning eyes and skin irritation. *Id.* at 51:15-24. The coughing did not last long—about 30 minutes after his exposure. *Id.* at 52:20-21. Nor did his sneezing—which lasted for approximately 5 minutes. *Id.* at 53:11-13. But his other symptoms lasted longer: his eyes burned for two to three days, *id.* at 52:3-8, and his skin remained irritated for an equivalent amount of time. *Id.* at 53:21-23. His immediate symptoms resolved themselves. *Id.* at 54:5-6. But Mr. Taylor speculates that the incident may have contributed to his need for a later surgery on his nose. *Id.* at 54:24-55:2 ("Q: And why did you need a nose surgery? A. They say it was complications from either chemical agent or a drug use perhaps. I'm not sure. They couldn't determine.").

The defendants dispute many aspects of Mr. Taylor's narrative of the incident. In the narrative that they present in their Local Rule 56.1 statement, an unconscious inmate was lying on the floor of the corridor, leading one Captain Harris to instruct all of the inmates to place their hands on the wall of the corridor. Defs. 56.1 ¶¶ 5-6. Then, in the defendants' narrative, Officer Qayyum asked Mr. Dorsey to place his hands on the wall. *Id.* ¶ 8. But Mr. Dorsey did not comply,

and instead began to curse at the officer. *Id.* ¶¶ 9-10. Officer Qayyum states that Mr. Dorsey advanced toward him "in a threatening manner with closed fists while yelling expletives." *Id.* ¶ 11. Because he feared for his safety, and for "the safety of staff and other inmates," Officer Qayyum asserts, he deployed a single, two second burst of spray at Mr. Dorsey's face. *Id.* ¶¶ 12-14. In the defendants' account of events, Mr. Taylor was much further away during the spraying incident than in Mr. Taylor's version—10 feet—rather than the 3-4 feet described by Mr. Taylor. *Id.* ¶ 10. The defendants acknowledge, however, that Mr. Taylor was exposed to the chemical spray in the air, and that some of the chemical spray "made contact with his shirt and facial area when Louis Dorsey moved toward plaintiff." *Id.* ¶ 19. What the defendants do not seem to acknowledge, however, is that the Court must accept Mr. Taylor's version of events as recounted in his affidavit and in his deposition for purposes of evaluating their motion.

### B. Procedural History

Mr. Taylor was arrested by the New York City Police Department on December 26, 2015. Dkt. No. 2, at ECF 8. That arrest led to criminal charges against him in New York State Supreme Court. Complaint ("Compl."), Dkt. No. 8, Ex. A. Mr. Taylor commenced this action *pro se* on February 9, 2016 asserting claims for false arrest in relation to his December 26, 2015 arrest, and asserting claims for the use of excessive force and deliberate indifference to his medical needs in relation to the January 25, 2016 incident at the RNDC. Compl. at 8–12. On June 3, 2016, Judge Richard Sullivan, who was then presiding over this case, stayed the entire action pending the resolution of Plaintiff's criminal case. Dkt. No. 9.

On March 11, 2019, Mr. Taylor moved to amend his original complaint to add additional claims relating to his criminal prosecution. Dkt. No. 79. The Court granted him leave to do so. Dkt. No. 80. Plaintiff then filed his First Amended Complaint on May 9, 2019, Dkt. No. 87, after which—and without leave of Court—he filed his Second Amended Complaint (the "SAC"). Dkt.

No. 90.  On December 10, 2020, with the resolution of Mr. Taylor's criminal charges still on the horizon, the Court partially lifted the stay, permitting him to proceed with the litigation of his claims related to the incident at the RNDC.  Dkt. No. 132.

Officer Qayyum and the City of New York (the "City Defendants") filed a motion to dismiss the complaint on December 30, 2020, arguing that because Mr. Taylor had failed to plead his claims related to the incident at the RNDC against the City Defendants in the SAC, the City Defendants should be dismissed from this action.  *See* Dkt. No. 135 at 6–7.  In the alternative, the City Defendants argued that Mr. Taylor had failed to plead sufficient facts to support his claims for excessive force and deliberate indifference to his medical condition under 42 U.S.C. § 1983 and that he had failed to plead the existence of any municipal policy, practice, or custom sufficient to establish liability under *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658 (1978).  *Id.* at 7–12.  Plaintiff filed his opposition on February 9, 2021.  Dkt. No. 150.  The City Defendants filed a reply on March 22, 2021.  Dkt. No. 151.

The Court granted the motion to dismiss in part, dismissing without prejudice Plaintiff's claim of deliberate indifference against Officer Qayyum, his municipal liability claim against the City of New York, and his claims for intentional infliction of emotional distress against both Officer Qayyum and the City of New York.  Dkt. No. 200.  The Court also granted Plaintiff leave to amend his complaint for the third time.  *Id.*  On January 20, 2022, Mr. Taylor filed his Third Amended Complaint (the "TAC").  Dkt. No. 210.

On June 6, 2022, the City Defendants filed this motion for summary judgment to dismiss Plaintiff's federal and state claims.  Dkt. No. 231 (notice of motion); Dkt. No. 234 ("Ds Mem.").  In support of the motion, the City Defendants submitted a Local Rule 56.1 Statement, Dkt. No. 233, as well as a supporting affidavit by Assistant Corporation Counsel, Amanda Rolon.  Dkt. No. 232.  The City Defendants also served a notice, pursuant to Local Rule 56.2 informing the plaintiff that,

among other things, "THE CLAIMS YOU ASSERT IN YOUR COMPLAINT MAY BE

DISMISSED WITHOUT A TRIAL IF YOU DO NOT RESPOND TO THIS MOTION by filing

sworn affidavits and other papers as required by Rule 56(e) of the Federal Rules of Civil Procedure

and by Local Civil Rule 56.1."  Dkt. No. 233 at 1.

     After several extensions of time granted by the Court, on July 27, 2022, Plaintiff filed an

opposition to Defendants' motion.  Dkt. No. 252 ("Opp.").  Notwithstanding the warning to him

contained in the City Defendants' Local Rule 56.2 notice, Mr. Taylor did not respond to the Local

Rule 56.1 statement submitted by the City Defendants.  He did, however, file a short affidavit in

support of his motion.  *See* Taylor Aff.  He attached to his response a number of loose, unidentified

and unauthenticated documents.  The motion was fully briefed when the City Defendants filed their

reply on September 2, 2022.  Dkt. No. 259 ("Reply").

## III.   LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 56

     Defendants are entitled to summary judgment on a claim if they can "show[] that there is no

genuine dispute as to any material fact and [they are] entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is

proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the

moving party is entitled to a judgment as a matter of law.'" (quoting former Fed. R. Civ. P. 56(c))).

A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for

the nonmoving party," while a fact is material if it "might affect the outcome of the suit under the

governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Factual disputes that are

irrelevant or unnecessary will not be counted."  *Id.*

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to present "evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 323–24). To defeat a motion for summary judgment, the non-movant—in this case, Plaintiff—"must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)). A plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, and "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). The Court's job is not to "weigh the evidence or resolve issues of fact." *Lucente v. IBM Corp.*, 310 F.3d 243, 254 (2d Cir. 2002); *see also Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("In applying th[e] [summary judgment] standard, the court should not weigh evidence or assess the credibility of witnesses."). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005) (quoting *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996)). "[T]he judge must ask . . . not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Id.* at 553 (quoting

*Anderson*, 477 U.S. at 252); *see also Battino v. Cornelia Fifth Ave., LLC*, 861 F. Supp. 2d 392, 400 (S.D.N.Y. 2012) ("To avoid summary judgment, all that is required of the non-moving party is a showing of sufficient evidence supporting the claimed factual dispute as to require a . . . jury's resolution of the parties' differing versions of the truth." (citing *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006))).

Where, as here, the party opposing summary judgment is proceeding *pro se*, the Court must construe that party's submissions "liberally and interpret them to raise the strongest arguments that they suggest." *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 536 (2d Cir. 1999) (internal quotation marks and citation omitted).  "It is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants," *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010), "particularly where motions for summary judgment are concerned," *Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014); *accord Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016).  Proceeding *pro se*, however, "does not . . . relieve [a pro se party opposing summary judgment] from the usual requirements of" opposing such a motion.  *Fitzpatrick v. N.Y. Cornell Hosp.*, No. 00-cv-8594, 2003 WL 102853, at *5 (S.D.N.Y. Jan. 9, 2003).

### B.  Local Rule 56.1

Local Civil Rule 56.1 of the Southern and Eastern Districts of New York sets forth specific requirements about how the facts relied upon by the moving party and disputed by the opposing party are to be presented.  A party moving for summary judgment must annex to its notice of motion "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  L.R. 56.1(a).  Local Rule 56.1(b) requires the party opposing the motion to "include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts

as to which it is contended that there exists a genuine issue to be tried." L.R. 56.1(b).  All statements made in a Local Rule 56.1 statement "must be followed by citation to evidence which would be admissible."  L.R. 56.1(d).  "Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."  L.R. 56.1(c).

Pro se litigants must also comply with Local Rule 56.1.  Local Rule 56.2 "plays a valuable role in alerting pro se litigants to the potentially serious consequences of a motion for summary judgment, and to the requirements for opposing such a motion."  L.R. 56.2 Committee Note.  Under Local Rule 56.2, "[i]f the moving party seeks summary judgment against a pro se litigant, the moving party is also required to notify the pro se litigant of the requirements of Rule 56 and Local Civil Rule 56.1." Wali v. One Source Co., 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009).  "Pro se litigants are then not excused from meeting the requirements of Local Rule 56.1."  Id. (citing Vt. Teddy Bear Co. v. 1–800–BEARGRAM Co., 373 F.3d 241, 246 (2d Cir. 2004)).

While Local Rule 56.1 provides that the failure to respond to an asserted fact results in the fact being "deemed to be admitted for purposes of the motion," a 56.1 statement "is not itself a vehicle for making factual assertions that are otherwise unsupported in the record."  Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) (quoting Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 74 (2d Cir. 2001)).  "[I]n determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement.  It must be satisfied that the citation to evidence in the record supports the assertion."  Vt. Teddy Bear Co., 373 F.3d at 244.  "Where . . . the record does not support the assertions in a Local Rule 56.1 statement, those assertions should be disregarded and the record reviewed independently."  Holtz, 258 F.3d at 74.  "A

party who declines to respond to a Rule 56.1 statement in the proper form eschews its right to have the Court search the record to determine whether the allegedly undisputed fact is in fact disputed." *Keawsri v. Ramen-Ya Inc.*, No. 17-CV-2406 (LJL), 2021 WL 3540671, at *3 (S.D.N.Y. Aug. 10, 2021) (citing *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001)).

"[W]here a *pro se* plaintiff fails to submit a proper Rule 56.1 statement in opposition to a summary judgment motion, the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." *Wali*, 678 F. Supp. 2d at 178 (citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001)). "A court has broad discretion to overlook a failure to comply with Local Rule 56.1 and may choose instead to conduct its own 'assiduous review of the record.' For example, that authority can and has been exercised on behalf of pro se litigants." *Keawsri*, 2021 WL 3540671, at *3 (quoting *Holtz*, 258 F.3d at 73).

The Court will not treat Plaintiff's failure to respond to the defendants' 56.1 statement as an admission of the facts asserted in that statement. The Court's decision is driven by the fact that the record evidence clearly contradicts the narrative presented by the defendants in that statement. Mr. Taylor presented an affidavit in support of his opposition in which he asserts that Officer Qayyum's use of force was not provoked by any threat by Mr. Dorsey or any other inmate. The defendants entirely overlook Mr. Taylor's affidavit in their reply briefing. Moreover, although one of the documents submitted by the defendants in support of their motion was the transcript of the plaintiff's deposition, the defendants ignore evidence in it that contradicts their preferred narrative. The defendants' 56.1 statement cites to his deposition as source materials for certain of the assertions contained in it. *See, e.g.*, Defs. 56.1 ¶ 10. Therefore, to satisfy its obligation "to be satisfied that the citation to evidence in the record supports the assertion" in the 56.1 statement, the Court reviewed the deposition transcript. *Vt. Teddy Bear Co.*, 373 F.3d at 244. Mr. Taylor's deposition is short—only 106 pages long. A review of the transcript of Mr. Taylor's testimony

revealed the narrative detailed above, which conflicts substantially with the narrative promoted by the defendants.

As a result, the Court has exercised its discretion to excuse Mr. Taylor's failure to comply with Local Rule 56.1 in connection with this motion, and has, instead, undertaken its own assiduous review of the record.  In this instance, it would be unjust to treat the narrative presented in the defendants' 56.1 statement as admitted merely because Mr. Taylor—a *pro se* litigant—failed to respond to it.  The Court knows that admissible evidence—Mr. Taylor's sworn deposition testimony and his affidavit—contradicts many of the assertions in the defendant's 56.1 statement.  To ignore knowingly Mr. Taylor's sworn testimony would—at least—be inconsistent with the special solicitude due to *pro se* litigants.

In its review of the record, the Court has not considered the content of the January 27, 2016 "Inmate Voluntary Statement" by Mr. Dorsey that was provided to the Court by the defendants. Rolon Aff. Ex. F.  That document is witnessed, but is unsworn, and does not contain a declaration pursuant to 28 U.S.C. § 1746.  Therefore, it is inadmissible hearsay that should not be considered by the Court in the context of this motion for summary judgment.  *See LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65 (2d Cir. 1999).[3]

---

[3] The Court observes that, as with Mr. Taylor's deposition, the defendants have been very selective in their presentation of the facts in this document.  They fail to present in their 56.1 statement, or to acknowledge in their briefing, the facts contained in it that are inconsistent with the narrative that they have presented to the Court.  The defendants cite to Mr. Dorsey's statement to support the proposition that an inmate was lying on the floor in the corridor before the incident and that Mr. Dorsey cursed at Officer Qayyum.  Defs. 56.1 ¶¶ 4. 10.  The defendants did not present to the Court other parts of the statement that are inconsistent with their preferred narrative, such as the following statement by Mr. Dorsey: "I then said Oh Sh*t, Oh Sh*t, when I was approached by C.O. Qayyum . . . and told to shut the f**k up ***hole.  I replied, my father's been dead thirty yrs, who you talking to like that.  C.O. Qayyum . . . looked me dead in my eyes; and then commenced to spray me with MK9.  He sprayed three blasts, that was so profuse, that everyone in the area (staff included) was affected by this deadly chemical agent."  The statement in the document contradicts the defendants' assertion that Officer Qayyum sprayed just once, and arguably supports Mr. Taylor's narrative that Officer Qayyum acted at least precipitously, and arguably maliciously, when he sprayed Mr. Dorsey.  The Court does not consider the facts in the document at all for purposes of this opinion, but believes that the defendants' selective presentation of the information contained in the source materials underlying their 56.1 statement is worthy of note.

IV.   **DISCUSSION**

The defendants move for summary judgment with respect to Mr. Taylor's claims arising from the January 25, 2016 incident.  First, they argue that the undisputed facts do not support Mr. Taylor's claim against Officer Qayyum for the use of excessive force against him, and that, in any event, Officer Qayyum is entitled to qualified immunity.  Second, they contend that because Mr. Taylor has failed to plead compliance with New York's notice of claim requirements that his state law claims should be dismissed.  The Court takes up each argument in turn below.

**A.  Excessive Force Claim Against Officer Qayyum**

**i.   Legal Standard**

"Section 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (citations omitted). "Analysis of a claim for use of excessive force begins with 'identification of the specific constitutional right allegedly infringed by the challenged application of force.'" *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (brackets omitted) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)). "While the Eighth Amendment's protection does not apply 'until after conviction and sentence,' the right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment." *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (citation omitted) (quoting *Graham*, 490 U.S at 392 n.6).  As a pretrial detainee, Plaintiff's excessive force claim arises under the Fourteenth Amendment.

To succeed in an excessive force claim under the Fourteenth Amendment, a pretrial detainee like Mr. Taylor must first show that the defendant used force "purposefully, knowingly, or (perhaps) recklessly." *Edrei v. Maguire*, 892 F.3d 525, 534 (2d Cir. 2018) (citing *Kingsley v. Hendrickson*, 576 U.S.

389, 395–96 (2015)).  This is because "accidental or negligent acts are not subject to Fourteenth Amendment liability."  *Id.*

A pretrial detainee must then show that "the force purposely or knowingly used against him was objectively unreasonable."  *Kingsley*, 576 U.S. at 397.  "A court (judge or jury) cannot apply this standard mechanically.  Rather, objective reasonableness turns on the 'facts and circumstances of each particular case.'"  *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)) (internal citation omitted).  The determination whether given conduct was objectively reasonable must be made by the court "from the perspective of a reasonable officer on the scene," accounting for the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained . . . ."  *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 540 (1979)).  The Supreme Court identified six non-exhaustive considerations that "may bear on the reasonableness or unreasonableness of the force used:  [(1)] the relationship between the need for the use of force and the amount of force used; [(2)] the extent of the plaintiff's injury; [(3)] any effort made by the officer to temper or to limit the amount of force; [(4)] the severity of the security problem at issue; [(5)] the threat reasonably perceived by the officer; [(6)] and whether the plaintiff was actively resisting."  *Id.*

Judge Carter has observed that "granting summary judgment against plaintiffs on excessive force claims is rarely appropriate."  *Anderson v. City of New York*, No. 1:16-cv-02583 (ALC), 2019 WL 1426723, at *8 (S.D.N.Y. Mar. 28, 2019) (citing *Amnesty America v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004)).  That is unsurprising because whether a "use of force was" justified is a "fact intensive inquiry" that often must be "left for a jury to decide."  *Olutosin v. Lee*, No. 14-cv-685 (NSR), 2016 WL 2899275, at *9 (S.D.N.Y. May 16, 2016) (quoting *Landy v. Irizarry*, 884 F. Supp. 788, 797 (S.D.N.Y. 1995) (collecting cases)).  And as noted, "[a]ssessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment."  *Anderson*, 2019 WL 1426723, at *8 (quoting *Rule*, 85 F.3d at 1011).  For those reasons,

"[c]ourts are hesitant 'to dismiss complaints alleging excessive force even at the summary judgment stage if conflicts exist in the record regarding the degree and justification of force.'" *Id.* (quoting *Atkins v. County of Orange*, 372 F. Supp. 2d 377 (S.D.N.Y. 2005)); *see also Jeanty v. Cty. of Orange*, 379 F. Supp. 2d 533, 541 (S.D.N.Y. 2005) (quoting *Evering v. Rielly*, No. 98-cv-6718 (DB), 2001 WL 1150318, at *7 (S.D.N.Y. Sept. 28, 2001) (collecting cases)).

### ii.   Application

Disputed issues of material fact preclude the entry of summary judgment against Mr. Taylor with respect to his excessive force claim. Officer Qayyum intentionally sprayed mace and directed it toward Mr. Dorsey, and then, as Mr. Dorsey moved to avoid the spray, toward Mr. Taylor. His use of force was deliberate and not accidental.

Whether Officer Qayyum intended to harm Mr. Taylor in particular is immaterial for purposes of this analysis. It is undisputed that the officer intentionally and knowingly deployed his spray. His can of spray did not "go[] off by accident." *Kingsley*, 576 U.S. at 396. Because Mr. Taylor's claim arises under the Fourteenth Amendment, the question then is whether the defendant's intentional or knowing use of force was objectively reasonable, not whether the officer subjectively intended to harm his victim.[4]

---

[4] The defendants conflate the two parts of the test under *Kingsley*. And some recent district court opinions, including that by Judge Amon in *Brown v. New York City Dep't of Corr.*, No. 16-cv-6077 (CBA)(LB), which is discussed below, seem to have embraced reasoning that adopts the argument advanced by the defendants. In *Brown*, for example, while acknowledging that Officer Qayyum intentionally sprayed the inmates to end a fight, Judge Amon wrote that "Qayyum's spraying of Brown in addition to Dorsey was, if anything, negligent, and the Supreme Court has made clear that 'liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.' *Kingsley*, 135 S. Ct. at 2472." *Brown*, Memorandum & Order, Dkt. No. 99 (E.D.N.Y Mar. 18, 2020), at 15. But this analysis is hard to reconcile with the analytical framework for an excessive force claim under the Fourteenth Amendment. "[E]xcessive force claims involve two separate state-of-mind questions." *Edrei*, 892 F.3d at 534 (internal quotation omitted). "The first concerns the official's state of mind with respect to his physical acts." *Id.* "Accidental or negligent *physical acts* are not subject to Fourteenth Amendment liability while those committed purposefully, knowingly, or (perhaps) recklessly are." *Id.* (emphasis added): *see also Kingsley*, 576 U.S. at 396 ("Thus, if an officer's Taser goes off by accident or if an officer unintentionally trips and falls on a detainee, causing him harm, the pretrial detainee cannot prevail on an excessive force claim. But if the use of force is deliberate—i.e., purposeful or knowing—the pretrial detainee's claim may proceed."). "The second mental state . . . concerns the defendant's state of mind with respect to whether his use of force was excessive." *Id.* (internal quotations omitted). *Kingsley*—as amplified by the Second Circuit in *Edrei*—makes clear that the question is whether the *physical act* constituting the use of force was intentional; not whether the force used

And a reasonable jury could find that the force intentionally employed by Officer Taylor was objectively unreasonable. As a result of the Officer Qayyum's act, Mr. Taylor suffered from burning eyes and skin for days. *See Tracy v. Freshwater*, 623 F.3d 90, 98 (2d Cir. 2010) ("Unquestionably, infliction of pepper spray on an arrestee has a variety of incapacitating and painful effects, and, as such, its use constitutes a significant degree of force.") (internal citation omitted).

Most importantly, on the facts presented by Mr. Taylor, the provocation for Officer Qayyum's use of force was disproportionate to the amount of force used. Mr. Dorsey cursed at the officer. But Mr. Dorsey did not threaten the officer: his hands were down, and he did not approach the officer. Mr. Dorsey and the other inmates in the corridor had not disobeyed any order by Officer Qayyum or any other correction officer. Officer Qayyum sprayed the inmates without warning or any attempt at an alternative use of force. On the facts recounted by Mr. Taylor, a reasonable jury could conclude that Officer Qayyum's use of force was objectively unreasonable.

The defendant's argument that this Court should reach the same conclusion as Judge Amon in *Brown v. New York City Dep't of Corr.*, No. 16-cv-6077 (CBA)(LB) does not have merit. In *Brown*, Judge Amon entered summary judgment in favor of Officer Qayyum in a suit brought by another inmate caught up in the January 25, 2016 spraying incident. *Brown*, Memorandum & Order, Dkt. No. 99 (E.D.N.Y Mar. 18, 2020). But the undisputed facts presented to Judge Amon in *Brown* painted a very different picture of the incident than Mr. Taylor describes in his affidavit and deposition testimony. In *Brown*, Officer Qayyum was acting to break up a fight between Mr. Dorsey and another inmate, and Mr. Dorsey failed to comply with Officer Qayyum's orders "aimed at

---

was intended to cause a particular degree of harm to a particular victim. The defendants' arguments conflate the two steps. Some courts also appear to have followed suit and to have merged the two steps outlined in *Kingsley* in their analysis of cases involving second-hand exposure to mace by pretrial detainees. This Court does not believe that approach to be consistent with *Kingsley* and *Edrei*. An intentional physical act that harms an unintended victim is actionable under *Kingsley*.

deescalating the situation." *Brown* at 10.  And the injuries suffered by the plaintiff in *Brown* "were not severe."  *Id.* at 16.

On that record, Judge Amon was able to conclude that "no reasonable juror could find that Qayyum's response to the threat presented by inmate Dorsey and the crowd of other inmates was objectively unreasonable."  *Id.* at 15.  But on the facts that the Court must accept for purposes of this motion, Mr. Dorsey and the "crowd of other inmates," including Mr. Taylor, did not present a threat to Officer Qayyum.  Simply put, the Court must decide this motion based on the facts presented to it in connection with this motion, not those presented to another court in a different case.

## B.  Qualified Immunity

### i.   Legal Standard

Officer Qayyum is not entitled to qualified immunity.  Qualified immunity is a judge-made doctrine that "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Id.*

"[T]he familiar standards that govern resolution of motions for summary judgment apply equally to such motions based on an assertion of qualified immunity."  *Sloley v. Vanbramer*, 945 F.3d 30, 36 (2d Cir. 2019) (citing *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014)).  Courts "evaluate claims of qualified immunity at summary judgment using a two-part inquiry:  (1) 'whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right' and (2) 'whether the right in question was clearly established at the time of the

violation.'" *Id.* (quoting *Tolan*, 572 U.S. at 656). "Courts have discretion in deciding the order in which to analyze the two prongs but under either, they 'may not resolve genuine disputes of' material fact." *Id.* (quoting *Tolan*, 572 U.S. at 656 and citing *Pearson*, 555 U.S. at 236).

"'Clearly established' means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Dist. of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (quotation omitted). "[E]xisting law must have placed the constitutionality of the officer's conduct beyond debate." *Id.* (quotation omitted). "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (quotation omitted). The Supreme Court has "repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Id.* at 63-64 (quotation omitted).

Qualified immunity protects an officer so long as "it was objectively reasonable for the officer to believe the conduct at issue was lawful." *Mudge v. Zugalla*, 939 F.3d 72, 79 (2d Cir. 2019) (quoting *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013)). "An officer is entitled to qualified immunity if *any* reasonable officer, out of the wide range of reasonable people who enforce the laws in this country, *could have* determined that the challenged action was lawful." *Muschette v. Gionfriddo*, 910 F.3d 65, 70 (2d Cir. 2018) (quoting *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016)).

### ii.    Analysis

Officer Qayyum is not entitled to qualified immunity. The Court has determined that, taking the facts in the light most favorable to Mr. Taylor, there is adequate record evidence to preclude summary judgment on his claim for violating his Fourteenth Amendment rights. On the facts presented to the Court, Officer Qayyum deployed his mace with no provocation other than the fact that an inmate had cursed at him. The inmate had not resisted commands or acted threateningly.

No reasonable officer could have determined that it was appropriate to deploy his mace at an inmate directly in the face without warning merely because the inmate cursed at him, without any other accompanying threatening actions, where the inmate had not failed to comply with commands issued by the officer.  It is clearly established that pepper spraying a restrained or cooperative person is excessive.  *Tracy v. Freshwater*, 623 F.3d 90, 98-99 & n.5 (2d Cir. 2010) ("[I]t [is] well established . . . that the use of entirely gratuitous force is unreasonable and therefore excessive, . . . [so] no reasonable officer could have believed that he was entitled to use pepper spray gratuitously against a restrained and unresisting arrestee" (citations omitted)).  On the facts presented by Mr. Taylor, Mr. Dorsey, Mr. Taylor and the other inmates in the corridor were not disobeying the officer or resisting his commands.

The defendants' argument regarding the application of qualified immunity is very thin.  After reciting the basic legal principles, it consists merely of the following three sentences:

> As discussed above, there is no evidence to suggest that defendant Qayyum's use of a chemical agent in response to a security threat was objectively unreasonable. Indeed, it was not.  Moreover, defendant Qayyum did not violate a clearly established law prohibiting the use of chemical agent spray in the particular circumstances before him.

Defs. Mem. at 10.

The argument rests on the defendants' failure to acknowledge Mr. Taylor's version of the events at issue, and their selective presentation of the record.  As described above, there is evidence that supports the conclusion that Officer Qayyum's conduct was objectively unreasonable.  Indeed, in Mr. Taylor's account of events, there was no security threat that justified it.  Perhaps because the defendants' argument rests on a one-sided presentation of the evidence, their brief presents no substantive argument regarding whether or not Officer Qayyum's conduct as described by Mr. Taylor violated clearly established law.  The Court is not required to develop an argument to support a finding of qualified immunity that was not presented to it by the defendants' counsel.

### C.  State Claims

#### i.   Legal Standard

The Court cannot grant the defendants summary judgment with respect to Mr. Taylor's state law claims because he testified in his deposition that he filed a timely notice of claim.  Under New York law, a notice of claim is a condition precedent to bringing a tort claim against a municipality and any of its officers, agents, or employees.  N.Y. Gen. Mun. Law §§ 50-e(1), 50-i(1*); C.S.A. Contracting Corp. v. N.Y. City Sch. Constr. Auth.*, 833 N.E.2d 266, 268 (N.Y. 2005); *see also Fincher v. Cty. of Westchester*, 979 F. Supp. 989, 1002 (S.D.N.Y. 1997); *Rose v. Cty. of Nassau*, 904 F. Supp. 2d 244, 247–48 (E.D.N.Y. 2012).  "The purpose of the notice-of-claim requirement is to afford the municipality an adequate opportunity to investigate the claim in a timely and efficient manner and, where appropriate, to settle claims without the expense and risks of litigation."  *Hardy v. N.Y. City Health & Hosp. Corp.*, 164 F.3d 789, 794 (2d Cir. 1999) (quoting *Fincher*, 979 F. Supp. at 1002).  "The notice of claim must provide, among other things, the nature of the claim and must be filed within ninety days after the claim arises."  *Rose*, 904 F. Supp. 2d at 248 (citing N.Y. Gen. Mun. Law § 50-e).

"In addition, the plaintiff must plead in his complaint that:  (1) he has served the notice of claim; (2) at least thirty days have elapsed since the notice was filed and before the complaint was filed; and (3) in that time the defendant has neglected to or refused to adjust or satisfy the claim."  *Id.* (citing § 50-i).  "'Notice of claim requirements are construed strictly by New York state courts, and failure to abide by their terms mandates dismissal of the action' for lack of subject matter jurisdiction."  *Tulino v. City of New York*, No. 15-cv-7106 (JMF), 2016 WL 2967847, at *3 (S.D.N.Y. May 19, 2016) (quoting *AT&T Co. v. N.Y.C. Dep't of Human Res.*, 736 F. Supp. 496, 499 (S.D.N.Y. 1990) (collecting cases)).

The notice-of-claim requirement does not apply to federal claims brought under Section 1983.  *See, e.g., Bordeau v. Metro. Transit Auth.*, No. 06-cv-6781-DLI, 2008 WL 4455590, at *1

(E.D.N.Y. Sept. 30, 2008).  However, "in a federal court, state notice-of-claim statutes apply to

state-law claims." *Hardy*, 164 F.3d at 793 (emphasis in original) (citation omitted); *see also Cruz v. City*

*of New York*, 232 F. Supp. 3d 438, 448 (S.D.N.Y. 2017) (quoting *Fincher*, 979 F. Supp. at 1002) ("The

notice of claim requirements apply equally to state tort claims brought as pendent claims in a federal

civil rights action.").

###### ii.   **Application**

There is a disputed issue of material fact regarding whether Mr. Taylor filed a notice of

claim.  In his deposition testimony, Mr. Taylor asserts that he filed a timely notice of claim.  Taylor

Dep. 9:19-10:21.[5]  And as part of his opposition, Mr. Taylor has presented an October 27, 2016

letter from the Legal Aid Society in which a paralegal confirmed the filing of a notice of claim with

the Office of the New York City Comptroller.  Opp. at 10.  That letter does not establish the date of

the filing of the notice of claim.  Nor does it indicate that the January 25, 2016 incident was within

the scope of the notice that it describes.  *Id.*  However, the letter provides some support for the clear

testimony by Mr. Taylor in his deposition that he did file a timely notice of claim with the

Comptroller.  Because there is a disputed issue of material fact regarding whether Mr. Taylor filed a

timely notice of claim, the Court must deny the defendants' motion for summary judgment with

respect to Plaintiff's state law claims.

The Court pauses to note an unusual aspect of the defendants' briefing on this topic.  The

defendants' motion is framed as a motion for summary judgment.  The legal standard described in

their briefing is the standard that applies to a motion brought under Rule 56 of the Federal Rules of

---

[5] "Q.  Did you file a Notice of Claim for the alleged 20 January 25th, 2016 incident?  A.  Yes, I did.  Q.  Did you file a Notice of Claim with the Comptroller's office?  A.  Yes.  Q.  Do you remember when you filed the Notice of Claim?  A. I'm not sure exactly.  It was -- I think it was probably a month there after the incident.  Q.  And what process did you follow or take to file  that Notice of Claim?  A.  I filed a Notice of Claim by way of certified mail I believe, if I'm not mistaken.  Q.  And was that addressed to the Comptroller's office or somewhere else?  A.  To the Comptroller's office. And I also filed a complaint to the Prisoners' Rights Project, which they filed a Notice."

Civil Procedure.  *See* Defs. Mem. at 3-4.  And the defendants include in their 56.1 statement an assertion that the notice of claim was never filed.  Defs. 56.1 ¶ 23.  As a result, the Court has evaluated the motion as one brought for summary judgment under Rule 56 and has evaluated the record to determine whether there is a disputed issue of material fact regarding the filing of a notice of claim—there is.

However, in the memorandum filed in support of the motion, the defendants argue that judgment should be entered in their favor on this issue not because the undisputed facts support the conclusion that Mr. Taylor never filed a notice of claim, but rather because "the TAC does not allege that a Notice of Claim was filed for this incident at any point, let alone within 90 days of the alleged incident."  Defs. Mem. at 5.  This is an argument regarding the sufficiency of the pleadings, not one regarding the sufficiency of the evidence.  A motion testing the sufficiency of the pleadings should be brought under Rule 12 of the Federal Rules of Civil Procedure, not Rule 56.  The defendants did not raise this argument in their previous motion to dismiss.  And they did not alert the *pro se* litigant that their motion with respect to this issue was brought under Rule 12.  The Court does not take a position regarding whether the defendants' might still seek to challenge the sufficiency of the plaintiff's pleadings under Federal Rule of Civil Procedure 12(c).  However, the Court declines to convert *sua sponte* the defendants' motion for summary judgment into a motion for judgment on the pleadings, given that Mr. Taylor is proceeding *pro se* and was not provided notice of such a motion.[6]

## V.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is DENIED.

---

[6] The defendants argue that "even if plaintiff could amend the complaint for a fourth time, he could not cure this failure [to file a timely notice of claim]."  Defs. Mem. at 5.  In evaluating any argument that such an amendment would be futile, the Court would be required to consider Mr. Taylor's testimony at his deposition that he did file a timely notice of claim.

The Court requests that counsel for the City Defendants provide Plaintiff with copies of unpublished cases cited in this decision pursuant to Local Rule of the United States District Courts for the Southern and Eastern Districts of New York 7.2.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to mail a copy of this order by first class mail to Plaintiff and to terminate the motion pending at Dkt. No. 231.

SO ORDERED.

Dated:  August 17, 2023
New York, New York

_____
GREGORY H. WOODS
United States District Judge